Brian A. Knutsen, OSB No. 112266
Emma A. O. Bruden, OSB No. 163525
KAMPMEIER & KNUTSEN PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Telephone: (503) 841-6515 (Knutsen)
              (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
         emma@kampmeierknutsen.com

Erin Saylor, OSB No. 085725 (*admission application forthcoming*)
COLUMBIA RIVERKEEPER
1125 SE Madison Street, Suite 103A
Portland, Oregon 97214
Telephone: (541) 399-4775
Email: erin@columbiariverkeeper.org

*Attorneys for Plaintiff Columbia Riverkeeper*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PENDLETON DIVISION

| | |
|---|---|
| **COLUMBIA RIVERKEEPER**, | Case No. 2:20-cv-2256 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** |
| v. | |
| **PERENNIAL POWER HOLDINGS, INC.;** and **PERENNIAL-WINDCHASER, LLC**, | (Pursuant to Clean Water Act, 33 U.S.C. § 1365(a)(1)) |
| Defendants. | |

### I.    INTRODUCTION

1.    This action is a citizen suit brought under section 505 of the Clean Water Act ("CWA") as amended, 33 U.S.C. § 1365. Plaintiff, Columbia Riverkeeper (Riverkeeper), seeks declaratory and injunctive relief, the imposition of civil penalties, and the award of costs,

including attorneys' and expert witness' fees, for defendants Perennial Power Holdings, Inc. and Perennial-WindChaser, LLC's (collectively, "Perennial") discharges of pollutants to waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit in violation of the CWA.

## II.     JURISDICTION AND VENUE

2.      This Court has jurisdiction under 33 U.S.C. § 1365 (CWA citizen suit provision) and 28 U.S.C. § 1331 (federal question). Perennial is in violation of an "effluent standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f). The requested relief is proper under 28 U.S.C. §§ 2201 and 2202 and 33 U.S.C. §§ 1319 and 1365.

3.      In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Riverkeeper notified Perennial of the CWA violations alleged herein and of Riverkeeper's intent to sue under the CWA for those violations by letter dated and postmarked October 20, 2020 ("Notice Letter"). A copy of the Notice Letter is attached to this complaint as Exhibit 1. In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(1), Riverkeeper provided copies of the Notice Letter to the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region 10, the Director of the Oregon Department of Environmental Quality ("DEQ"), and Perennial's register agents by mailing copies to these individuals on October 20, 2020.

4.      As of the filing of this complaint, more than sixty days have passed since Riverkeeper mailed the Notice Letter as described in the preceding paragraph.

5.      Neither the EPA nor the DEQ has commenced any action constituting diligent prosecution to redress these violations. Specifically, neither EPA nor DEQ has commenced a civil or criminal action in a court of the United States or of a State to enforce against the

COMPLAINT – 2

violations alleged herein. *See* 33 U.S.C. § 1365(b)(1)(B). Further, while DEQ has issued an administrative penalty to Perennial, that penalty was issued after Riverkeeper issued the Notice Letter and this complaint is being filed less than 120 days after the Notice Letter was issued. *See* 33 U.S.C. 1319(g)(6)(B).

6. Perennial's violations of the CWA alleged herein are ongoing because, as of the filing of this complaint, the violations are continuing to occur and/or are reasonably likely to recur.

7. Venue is appropriate in this District under section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the source of the violations complained of is located in this District, in Umatilla County, Oregon.

8. A copy of this complaint will be served on the Attorney General of the United States, the Administrator of the EPA, and the Administrator of EPA Region 10 as required by section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4.

### III. PARTIES

9. Plaintiff Riverkeeper is suing on behalf of itself and its members. Riverkeeper is a 501(c)(3) non-profit corporation registered in the State of Washington. The mission of Riverkeeper is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. To achieve these objectives, Riverkeeper implements scientific, educational, and legal programs aimed at protecting water quality and habitat in the Columbia River Basin. This lawsuit is part of Riverkeeper's effort to improve water quality in the Columbia River Basin for purposes including recreation, habitat quality, and subsistence, recreational, and commercial fishing.

10. Riverkeeper has representational standing to bring this action. Riverkeeper has

over 16,000 members, some of whom reside in the vicinity of waters affected by Perennial's discharges of pollutants. Members of Riverkeeper use and enjoy the waters and the surrounding areas that are adversely affected by Perennial's discharges. Riverkeeper's members use these areas for, *inter alia*, fishing, swimming, hiking, walking, photography, boating, and observing wildlife. Perennial has violated the CWA by discharging pollutants to waters of the United States without the required NPDES permit. Riverkeeper and its members have concerns about the impacts of Perennial's discharges of stormwater associated with construction activity on the Columbia River and its tributaries. Perennial's construction activities and associated stormwater discharges degrade water quality in the Columbia River Basin. The environmental, health, aesthetic, and recreational interests of Riverkeeper's members have been, are being, and will be adversely affected by Perennial's CWA violations addressed herein and by the members' reasonable concerns related to the effects of the violations and pollutant discharges. These injuries are fairly traceable to the violations and redressable by the Court.

11.     Defendant Perennial Power Holdings, Inc. is a corporation authorized to conduct business under the laws of the State of Oregon.

12.     Defendant Perennial-WindChaser, LLC is a corporation authorized to conduct business under the laws of the State of Oregon.

13.     Defendant Perennial-WindChaser, LLC is a wholly owned subsidiary of Defendant Perennial Power Holdings, Inc.

14.     Perennial seeks to develop the Perennial Wind Chaser Station, a gas-fired combustion turbine generator facility that would be constructed adjacent to the Hermiston

Generating Station in Hermiston, Oregon.[1] As used herein, the term "Site" includes all areas associated with the proposed development of the Perennial Wind Chaser Station, including areas proposed for the generating plant and contiguous and/or adjacent areas owned and/or operated by Perennial, areas proposed for temporary laydown or other construction work, areas proposed for construction and/or modification of transmission lines, areas proposed for construction and/or modification of natural gas pipelines, areas proposed for construction and/or modification of substations, and any other areas proposed for construction and/or modifications associated with the proposed project.

### IV.  LEGAL BACKGROUND

15. Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

16. As relevant here, section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" unless such discharge is authorized by an NPDES permit issued under section 402 of the CWA, 33 U.S.C. § 1342.

17. The CWA defines the term "discharge of a pollutant" to mean, in part, "any addition of any pollutant to navigable waters from any point source . . . ." 33 U.S.C. § 1362(12).

18. Section 402(a) of the CWA empowers EPA or an authorized state to issue NPDES permits authorizing discharges of pollutants. 33 U.S.C. § 1342(a). The State of Oregon has established a federally-approved state NPDES program administered by the Oregon DEQ.

19. Accordingly, DEQ may issue NPDES permits authorizing discharges of pollutants. Compliance with the terms and conditions of an NPDES permit is deemed

---

[1] The approximate location of the proposed generating facility is: 45°48'09.06" N, 119°21'52.26" W.

COMPLAINT – 5

compliance with the general discharge prohibition in section 301(a) of the CWA. 33 U.S.C. § 1342(k). Discharges of pollutants that are not authorized by an NPDES permit violate the CWA and are grounds for a citizen enforcement action. 33 U.S.C. §§ 1311(a), 1365(a)(1), (f)(1).

20. The CWA defines the term "point source" to mean, in part, "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. * * *." 33 U.S.C. § 1362(14).

21. The CWA defines the term "pollutant" to mean, in part, "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water. * * *." 33 U.S.C. § 1362(6).

22. The CWA's prohibition on discharging pollutants from point sources applies broadly. The CWA defines the term "navigable waters" to mean "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The CWA defines the term "person" to mean "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5).

23. The CWA regulates and requires an NPDES permit for stormwater discharges "associated with industrial activity." 33 U.S.C. §§ 1342(p)(2)(B), (p)(3)(A).

24. The term "stormwater discharge associated with industrial activity" is defined to include stormwater discharges associated with construction activity, including clearing, grading, and excavation, except operations that result in the disturbance of less than five acres of total

land area, but including disturbance of less than five acres of total land area that is a part of a larger common plan or development or sale if the larger common plan will ultimately disturb five acres or more. *See* 40 C.F.R. § 122.26(b)(14)(x). Further, beginning in 1994, discharges of stormwater associated with smaller construction activities are also subject to the NPDES permit requirement where certain conditions are present, including "[c]onstruction activities including clearing, grading, and excavating that result in land disturbance of equal to or greater than one acre . . . ." *See id.* §§ 122.26(a)(9)(i)(B), (b)(15) (defining small construction activity subject to NPDES permit requirements).

25. DEQ has promulgated regulations to implement the NPDES program in the State of Oregon. The regulations provide that a person must obtain a valid NPDES permit before discharging stormwater associated with construction actives that are subject to EPA's permit requirements identified above. Or. Admin. R. 340-045-0015(2).

26. DEQ has issued a general permit for discharges of stormwater associated with construction activity. The prior iteration of DEQ's construction stormwater general permit was issued in December 2016 and expired on December 14, 2020 ("2016 Permit").

27. To obtain coverage under the 2016 Permit, an applicant must submit at least thirty days before any planned land disturbance an application, an approved Land Use Compatibility Statement, and an Erosion and Sediment Control Plan. 2016 Permit, Schedule A1.

28. DEQ issued a new general permit for discharges of stormwater associated with construction activity that became effective on December 15, 2020 and that has an expiration date of December 14, 2025 ("2020 Permit").

29. To obtain coverage under the 2020 Permit, an applicant must submit at least thirty days before any planned land disturbance or construction activities an application, an Erosion

COMPLAINT – 7

and Sediment Control Plan, and a Land Use Compatibility Statement indicating that the proposed activities are compatible with the local government's acknowledged comprehensive plan. 2020 Permit, Schedule A1.2.2.

30.     Both the 2016 and 2020 Permit require the implementation of best management practices to reduce erosion and otherwise minimize stormwater contamination, to inspect and monitor the site and associated discharges, and to take corrective actions where problems are identified. 2016 Permit, Schedule A7–9, A12–13, B1; 2020 Permit, Schedule A2, A3–5, B6.

## V.     FACTS

31.     Perennial's construction of the Perennial Wind Chaser Station at the Site is subject to the NPDES permit requirements described above. The project will and has generated discharges of stormwater associated with construction activity, including clearing, grading, and excavation, and the project will result in the disturbance of five or more acres of total land area. *See* 40 C.F.R. § 122.26(b)(14)(x). Alternatively, the project would be subject to the NPDES permit requirements as a small construction activity under 40 C.F.R. §§ 122.26(a)(9)(i)(B), (b)(15).

32.     Upon information and belief, Perennial commenced construction activities at the Site on or around September 21, 2020. Perennial's construction activities at the Site have included, but are not limited to, clearing and grading activities for an access road.

33.     Perennial had not submitted a complete and current application to DEQ for coverage under DEQ's 2016 or 2020 Permit when construction activity at the Site commenced.

34.     As of the filing of this complaint, Perennial has not submitted a complete and current application to DEQ for coverage under the 2020 Permit for the Site.

35.     As of the filing of this complaint, DEQ has not granted coverage to Perennial

COMPLAINT – 8

under the 2016 Permit or 2020 Permit for Site. Nor has Perennial obtained any other NPDES permit coverage for discharges of stormwater associated with construction activity from the Site as of the filing of this complaint.

36. The Site discharges stormwater associated with industrial activity—i.e., stormwater associated with construction activity—every time there is sufficient precipitation to generate a discharge from the Site, including whenever there is at least 0.1 inches of precipitation in a twenty-four hour period.

37. The Site discharges such construction stormwater via pipes, ditches, culverts, channels, stormwater conveyance systems, and other point sources to the Umatilla River, the Columbia River, and Westland A Canal, which are waters of the United States.

38. Perennial has violated section 301(a) of the CWA each time it discharges stormwater associated with construction activity from the Site to waters of the United States, including each time there is at least 0.1 inches of precipitation in a twenty-four hour period.

39. These illegal discharges include, but are not limited to, those that occurred on October 10, 11, and 24, 2020, November 5, 6, 7, 11, 13, 14, and 15, 2020, and December 17, 20, 21, and 26, 2020.

40. Upon information and belief, Perennial's discharges of stormwater associated with construction activity from the Site in violation of section 301(a) of the CWA as alleged herein are ongoing because they are continuing to occur and/or are reasonably likely to recur.

41. Perennial's unpermitted discharges of pollutants to the Umatilla River, the Columbia River, and Westland A Canal degrade the environment and the water quality of the Columbia River Basin. Perennial's unpermitted discharges of pollutants foul waters where Riverkeeper's members live, work, recreate, fish, and engage in other activities.

42. Perennial's unpermitted discharges of pollutants were avoidable had Perennial been diligent in overseeing and controlling operations, maintenance, monitoring, and compliance with regulatory laws.

43. Perennial has benefitted economically from its unpermitted discharges of pollutants. The economic benefit that has accrued to Perennial from its CWA violations alleged herein far exceeds the administrative penalty imposed by DEQ for Perennial's failure to obtain an NPDES permit before commencing construction activity at the Site.

44. Any and all additional violations of the CWA by Perennial that occur or are discovered after those described in the Notice Letter but before a final decision in this action are continuing violations subject to this complaint.

45. Without the imposition of appropriate civil penalties and/or the issuance of an injunction and other relief, Perennial is likely to continue to violate the CWA to the further injury of Riverkeeper, its members, and others.

## VI.   CAUSE OF ACTION

46. Riverkeeper hereby alleges and incorporates by reference all of the preceding paragraphs.

47. Perennial is a "person" within the meaning of section 301(a) of the CWA, 33 U.S.C. §1311(a), and is subject to suit under the CWA's citizen suit provision, 33 U.S.C. § 1365.

48. Perennial has violated and is violating section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants from a point source to waters of the United States. These are violations of an "effluent standard or limitation" as that term is defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f). These violations are ongoing.

## VII.   RELIEF REQUESTED

WHEREFORE, Riverkeeper respectfully requests that the Court grant the following relief:

A.   Declare that Perennial has violated and continues to be in violation of the CWA as alleged herein;

B.   Issue injunctive relief requiring Perennial to comply with the CWA;

C.   Issue injunctive relief requiring Perennial to remediate the environmental damage and ongoing impacts resulting from its illegal discharges of pollutants;

D.   Order Perennial to provide Riverkeeper with copies of all reports and other documents that Perennial submits to or receives from EPA or DEQ regarding discharges of pollutants from the Site at the time the reports or documents are submitted to or received from those authorities, for a period of two years after completion of this case;

E.   Order Perennial to pay civil penalties pursuant to sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19;

F.   Award Riverkeeper its litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d), or as otherwise authorized by law; and

G.   Award such other relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 28th day of December, 2020.

KAMPMEIER & KNUTSEN PLLC

By: s/ Brian A. Knutsen
Brian A. Knutsen, OSB No. 112266
Emma A. O. Bruden, OSB No. 163525
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
    Telephone: (503) 841-6515 (Knutsen)
              (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
        emma@kampmeierknutsen.com

COLUMBIA RIVERKEEPER
Erin Saylor, OSB No. 085725 (*admission application forthcoming*)
1125 SE Madison Street, Suite 103A
Portland, Oregon 97214
Telephone: (541) 399-4775
Email: erin@columbiariverkeeper.org

*Attorneys for Plaintiff Columbia Riverkeeper*

COMPLAINT – 12

# EXHIBIT 1

# KAMPMEIER & KNUTSEN PLLC
## ATTORNEYS AT LAW

EMMA A.O. BRUDEN
Licensed in Oregon & Washington
503.719.5641
emma@kampmeierknutsen.com

October 20, 2020

**Via CERTIFIED MAIL – Return Receipt Requested**

| | |
|---|---|
| Managing Agent | Managing Agent |
| Perennial Power Holdings, Inc. | Perennial-WindChaser, LLC |
| 300 Madison Avenue, Fourth Floor | 300 Madison Avenue, Fourth Floor |
| New York, NY 10017 | New York, NY 10017 |

JJ Jamieson
SVP Operations & Development
Perennial Power Holdings, Inc.
24 Waterway Avenue, Suite 740
Woodlands, TX 77380

Re:   Notice of Intent to File Suit for Violations of the Clean Water Act

Dear Managing Agent:

      This letter is submitted on behalf of Columbia Riverkeeper. This letter provides notice that Perennial Power Holdings, Inc. and Perennial-WindChaser, LLC (collectively, "Perennial") are in violation of the Clean Water Act ("CWA") and that Columbia Riverkeeper intends to file a citizen suit under section 505 of the CWA, 33 U.S.C. § 1365, for these violations at the expiration of a sixty day notice period initiated with this letter.

      Perennial has and continues to violate section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants to waters of the United States and the State of Oregon from the site proposed for development of the Perennial Wind Chaser Station, a gas-fired combustion turbine generator facility that would be constructed adjacent to the Hermiston Generating Station in Hermiston, Oregon.[1] As used herein, the term "site" includes all areas associated with the proposed development of the Perennial Wind Chaser Station, including areas proposed for the generating plant and contiguous and/or adjacent areas owned and/or operated by Perennial, areas proposed for temporary laydown or other construction work, areas proposed for construction and/or modification of transmission lines, areas proposed for construction and/or modification of natural gas pipelines, areas proposed for construction and/or modification of substations, and any

---

[1] The approximate location of the proposed generating facility is: 45°48'09.06" N, 119°21'52.26" W.

other areas proposed for construction and/or modifications associated with the proposed project. As described herein, Perennial is discharging pollutants, including stormwater associated with industrial activity, from the site without the authorization of a National Pollutant Discharge Elimination System ("NPDES") permit in violation of the CWA.

I.   **COLUMBIA RIVERKEEPER'S COMMITMENT TO PROTECTING A FISHABLE AND SWIMMABLE COLUMBIA RIVER.**

Columbia Riverkeeper's mission is to restore and protect the water quality of the Columbia River and all life connected to it, from the headwaters to the Pacific Ocean. Columbia Riverkeeper is a non-profit organization with members who live, recreate, and work throughout the Columbia River basin, including in areas affected by discharges from Perennial's site.

Water quality standards are designed to protect designated uses, including aquatic life, fishing, swimming, and drinking water. Perennial's stormwater discharges have the potential to reach the Columbia River both directly and via the Umatilla River, which flows to the Columbia. The Oregon Department of Environmental Quality (DEQ) has recognized "excess soil erosion which leads to turbidity and impaired salmonid spawning areas" as one of the most widespread concerns in the Umatilla River Basin. *See Umatilla River Basin Total Maximum Daily Load (TMDL) and Water Quality Management Plan (WQMP)* (*available at* https://www.oregon.gov/deq/FilterDocs/umatmdl.pdf). The Umatilla River is currently listed as impaired for turbidity, despite having TMDL limits for sediment.

Stormwater runoff is "one of the great challenges of water pollution control" and "is a principal contributor to water quality impairment of waterbodies nationwide." *See Urban Storm Management in the United States*, National Research Council (Oct. 15, 2008) (available online at: http://www.epa.gov/npdes/pubs/nrc_stormwaterreport.pdf). When rain sends runoff across streets, construction projects, and industrial facilities, the water picks up contaminants that are drained into waterways such as the Columbia River and its tributaries. To address this leading cause of water quality impairment, Columbia Riverkeeper invests significant time and resources in reducing pollutant loads from industrial, municipal, and construction stormwater sources.

This notice of intent to sue Perennial is part of Columbia Riverkeeper's effort to improve water quality in the Columbia River Basin for purposes including swimming, habitat quality, and subsistence, recreational, and commercial fishing. Perennial has failed to obtain coverage under Oregon's Construction Stormwater General Permit and has thereby failed to develop and implement important plans and procedures designed to minimize and monitor pollution discharges from the site.

II.   **LEGAL FRAMEWORK.**

Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251(a). To effect that policy, and as relevant here, section 301(a) of the CWA prohibits discharges of pollutants unless they are in compliance with an NPDES permit issued by the U.S. Environmental Protection Agency ("EPA") or an authorized state. *See* 33 U.S.C. §§ 1311(a), 1342. The NPDES permitting scheme

2

is the primary means by which discharges of pollutants are controlled. At a minimum, NPDES permits must include technology-based effluent limitations, any more stringent limitations necessary to meet water quality standards, and monitoring and reporting requirements. *See* 33 U.S.C. §§ 1311, 1342, 1318. In the State of Oregon, the Oregon Department of Environmental Quality ("DEQ") is authorized to administer the NPDES program.

The CWA defines the term "discharge of a pollutant" in part as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). The term "point source" is defined as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." *Id.* § 1362(14). The CWA defines "pollutant" to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial . . . waste discharged into water." *Id.* § 1362(6). Section 402(p)(3)(A) of the CWA, 33 U.S.C. § 1342(p)(3)(A), makes clear that "stormwater discharges associated with industrial activity" that are not authorized by an NPDES permit violate section 301(a) of the CWA.

EPA has defined the term "stormwater discharge associated with industrial activity" to include stormwater discharges associated with construction activity, including clearing, grading, and excavation, except operations that result in the disturbance of less than five acres of total land area, but including disturbance of less than five acres of total land area that is a part of a larger common plan or development or sale if the larger common plan will ultimately disturb five acres or more. *See* 40 C.F.R. § 122.26(b)(14)(x). Beginning in 1994, discharges of stormwater associated with smaller construction activities are also subject to the NPDES permit requirement where certain conditions are present, including "[c]onstruction activities including clearing, grading, and excavating that result in land disturbance of equal to or greater than one acre . . . ." *See id.* §§ 122.26(a)(9)(i)(B), (b)(15) (defining small construction activity subject to NPDES permit requirements).

The DEQ has promulgated regulations to implement the NPDES program in the State of Oregon. The regulations provide that a person must obtain a valid NPDES permit before discharging stormwater associated with construction actives that are subject to EPA's permit requirements identified above. Or. Admin. R. 340-045-0015(2). DEQ has issued a general permit for discharges of stormwater associated with construction activity, the current iteration of which was issued in December 2016 and expires on December 14, 2020 ("1200-C Permit"). To obtain coverage under the 1200-C Permit, an applicant must submit at least thirty days before any planned land disturbance an application, an approved Land Use Compatibility Statement, and an Erosion and Sediment Control Plan. 1200-C Permit, Schedule A1. The 1200-C Permit requires the implementation of best management practices to reduce erosion and otherwise minimize stormwater contamination, inspect and monitor the site and associated discharges, and take corrective actions where problems are identified. *Id.* at Schedule A7–9, A12–13, Schedule B1.

**III.     ALLEGED VIOLATIONS OF THE CLEAN WATER ACT BY PERENNIAL.**

Perennial's construction of the Perennial Wind Chaser Station at the site is subject to the NPDES permit requirements described above. Upon information and belief, Perennial commenced construction activities at the site on or around September 21, 2020. Perennial has not submitted a complete and current application to DEQ for coverage under DEQ's current 1200-C Permit. DEQ has not granted coverage to Perennial under any 1200-C Permit for discharges associated with construction activities from the site. Nor has Perennial secured any other NPDES permit for discharges associated with construction activity from the site.

The site discharges stormwater associated with industrial activity—i.e., stormwater associated with construction activity—every time there is sufficient precipitation to generate a discharge from the site, including whenever there is at least 0.1 inches of precipitation in a twenty-four hour period. The site discharges such construction stormwater via pipes, ditches, channels, stormwater conveyance systems, and other point sources to the Umatilla River, the Columbia River, and Westland A Canal.

Perennial has violated and will continue to violate section 301(a) of the CWA each time it discharges stormwater associated with construction activity from the site to the waters of the United States and the State of Oregon, including each time there is at least 0.1 inches of precipitation in a twenty-four hour period. These illegal discharges include those that occurred on October 10, 2020 and October 11, 2020.

**IV.     PARTY GIVING NOTICE.**

The full name, address, and telephone number of the party giving notice is:

Columbia Riverkeeper
407 Portway Avenue, Suite 301
Hood River, Oregon 97031
(541) 399-5312

**V.     ATTORNEYS REPRESENTING RIVERKEEPER.**

The attorneys representing Riverkeeper in this matter are:

| COLUMBIA RIVERKEEPER | KAMPMEIER & KNUTSEN PLLC |
|---|---|
| Erin Saylor, Staff Attorney<br>1125 SE Madison Street, Suite 103A<br>Portland, Oregon 97214<br>Tel: (541) 399-4775<br>Email: erin@columbiariverkeeper.org | Brian Knutsen<br>Emma Bruden<br>1300 SE Stark Street, Suite 202<br>Portland, Oregon 97214<br>Tel: (503) 841-6515 (Knutsen)<br>     (503) 719-5641 (Bruden)<br>Email: brian@kampmeierknutsen.com<br>     emma@kampmeierknutsen.com |

Simone Anter, Staff Attorney
401 Portway Avenue, Suite 301
Hood River, Oregon 97301
Tel: (541) 399-5312
Email: simone@columbiariverkeeper.org

## VI. CONCLUSION.

The above-described violations reflect those indicated by the information currently available to Columbia Riverkeeper. These violations are ongoing. Columbia Riverkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this notice of intent to sue.

Under Section 309(d) of the CWA, 33 U.S.C § 1319(d), Perennial is subject to a separate daily penalty assessment for each violation. The maximum daily penalty assessment for each violation is $55,800. 40 C.F.R. § 19.4. In addition to civil penalties, Columbia Riverkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law. Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Columbia Riverkeeper believes that this NOTICE OF INTENT TO SUE sufficiently states grounds for filing suit. If you believe that any of the allegations in this Notice are incorrect or based on incomplete information in the public record, please bring those facts to our attention. Columbia Riverkeeper intends, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against Perennial Power Holdings, Inc. and/or Perennial-WindChaser, LLC under Section 505(a) of the CWA for the violations described herein.

Sincerely,

KAMPMEIER & KNUTSEN PLLC

By: *[signature: Emma Bruden]*
Emma Bruden
1300 SE Stark Street, Suite 202
Portland, OR 97214
emma@kampmeierknutsen.com
Tel: (503) 719-5641

*Attorneys for Columbia Riverkeeper*

5

## CERTIFICATE OF SERVICE

I, Brian Knutsen, declare under penalty of perjury of the laws of Oregon and the United States that I am co-counsel for Columbia Riverkeeper and that on October 20, 2020 I caused copies of the foregoing Notice of Intent to Sue Under the Clean Water Act to be served on the following by depositing them with the United States Postal Service, certified mail, return receipt requested, postage prepaid:

Managing Agent
Perennial Power Holdings, Inc.
300 Madison Avenue, Fourth Floor
New York, NY 10017

CT Corporation System
Registered Agent for Perennial Power Holdings, Inc.
780 Commercial Street, SE, Suite 100
Salem, OR 97301

JJ Jamieson
SVP Operations & Development
Perennial Power Holdings, Inc.
24 Waterway Avenue, Suite 740
Woodlands, TX 77380

Administrator Andrew Wheeler
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Ave., N.W. (Mail Code 1101A)
Washington DC 20460

Managing Agent
Perennial-WindChaser, LLC
300 Madison Avenue, Fourth Floor
New York, NY 10017

CT Corporation System
Registered Agent for Perennial-WindChaser, LLC
780 Commercial Street SE, Suite 100
Salem, OR 97301

Regional Administrator Christopher W. Hladick
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue (Mail Code 21-B03)
Seattle, WA 98101

Director Richard Whitman
Oregon Department of Environmental Quality
700 N.E. Multnomah Street, Suite 600
Portland, OR 97232-4100

Brian Knutsen, OSB No. 112266